# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LINDA SHAKEEL,** *as wife of Raasheem Khalfani Aarif Shakeel, the deceased wage earner*, **Plaintiff,** v. **KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, Defendant.** | 4:20-cv-01131-CLM |

## **MEMORANDUM OPINION**

Linda Shakeel, the widow of Raasheem Khalfani Aarif Shakeel, seeks disability and disability insurance benefits from the Social Security Administration ("SSA") on behalf of her late husband. The SSA denied Mr. Shakeel's application for benefits in an opinion written by an Administrative Law Judge ("ALJ"). On appeal, Ms. Shakeel argues: (1) that the ALJ erred in evaluating the opinion of Mr. Shakeel's treating physician, Dr. Anjanetta Foster; and (2) that substantial evidence doesn't support the denial of benefits.

As detailed below, the ALJ erred in evaluating Dr. Foster's opinion evidence. And the court cannot say that the error was harmless. So the court will **VACATE**

the ALJ's decision and **REMAND** this case to the Commissioner for further proceedings not inconsistent with this opinion.

## I. Statement of the Case

This is the second time that Ms. Shakeel has appealed the SSA's denial of her husband's application for disability and disability insurance benefits to this court. Before the court discusses Ms. Shakeel's two unfavorable decisions, it details Mr. Shakeel's impairments, as Ms. Shakeel told them to the ALJ.

### A. Mr. Shakeel's Disability, as told to the ALJ

Mr. Shakeel was 45 years old at the time of his death. R. 124, 131. Mr. Shakeel completed one year of college and had past relevant work as a deliverer, health aid, and corrections officer. R. 221, 596–97.

Mr. Shakeel alleged that he couldn't work because he suffered from herniated discs, spinal stenosis, degenerative disc disease, bone spurs, diabetes, peripheral neuropathy, hypertension, severe headaches, and heart disease. R. 220. At the first ALJ hearing, Ms. Shakeel testified that Mr. Shakeel injured his neck in an altercation while working as a corrections officer. R. 31. In September 2013, Mr. Shakeel had neck surgery. R. 31–32. Two days later, Mr. Shakeel died with the cause of death listed as cardiopulmonary respiratory arrest. R. 32, 177.

At the second ALJ hearing, Ms. Shakeel testified that Mr. Shakeel had put off his shoulder surgery because his doctors wanted to first get his diabetes and

2

hypertension under control. R. 589. Ms. Shakeel also testified that Mr. Shakeel's pain medications caused him to sleep a lot and that his hypertension/diabetes medication caused him to suffer from dry mouth and be unable to hold his balance when walking. R. 589–90.

Ms. Shakeel testified that Mr. Shakeel had spinal stenosis, so he couldn't sit up straight in a normal chair. R. 591. She also testified that Mr. Shakeel could only sit for 10 to 15 minutes at a time, stand for 5 to 10 minutes at a time, and lift no more than 5 to 10 pounds at a time. R. 591–92. Though Mr. Shakeel could drive short distances, he had issues driving longer distances because his hands would go numb. R. 592. Ms. Shakeel also stated that Mr. Shakeel would sleep six hours between the hours of 8 a.m. and 5 p.m. and would be asleep within 30 minutes of a two-hour movie. R. 593.

### B.     The First ALJ Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Mr. Shakeel applied for disability and disability insurance benefits in June 2013. R. 12. The SSA initially denied Mr. Shakeel's claim in September 2013. *Id.* Mr. Shakeel's attorney then requested an ALJ hearing. *Id.* Before the hearing, the

SSA substituted Ms. Shakeel for Mr. Shakeel as the person eligible to receive the claimed disability insurance benefits. *Id.*

The ALJ held a hearing in January 2015. Seven months later, the ALJ denied Mr. Shakeel's request for benefits, R. at 12–21, finding that Mr. Shakeel was not disabled because at the time of his death he could perform jobs that exist in significant numbers in the national economy. R. 20.

Ms. Shakeel requested that the SSA's Appeals Council review the ALJ's decision. It declined to do so, R. 1–3, and Ms. Shakeel then appealed the denial of benefits to this court. This court reversed and remanded the SSA's denial of benefits because the ALJ's decision didn't discuss the spinal findings of Dr. Foster, one of Mr. Shakeel's treating physicians. *See Shakeel v. Berryhill*, 2018 WL 1856270 (N.D. Ala. Apr. 18, 2018). Relevant here, the court rejected the Commissioner's argument that Dr. Foster wasn't Mr. Shakeel's treating physician just because the record included documentation from only two physical examinations performed by Dr. Foster. *Id.* at *5. The court then instructed the ALJ "to explain her thought process in addressing Dr. Foster's treatment records." *Id.*

### C. Determining Disability

Before detailing the second ALJ decision the court lays out the SSA's five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Mr. Shakeel's residual functional capacity is the most important step here, as all of Ms. Shakeel's challenges flow from the ALJ's decision at this juncture.

### D. The Second ALJ Decision

The ALJ conducted a second hearing on Mr. Shakeel's claim for benefits in July 2019. A month later, the ALJ issued a second unfavorable decision. R. 566–77.

At Step 1, the ALJ determined that Mr. Shakeel was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 569.

At Step 2, the ALJ determined that Mr. Shakeel suffered from the following severe impairments: degenerative disc disease; coronary artery disease; diabetes mellitus; and a tobacco and alcohol abuse disorder. R. 569–71.

At Step 3, the ALJ found that none of Mr. Shakeel's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 571–72. Thus, the ALJ next had to determine Mr. Shakeel's residual functional capacity.

The ALJ determined that, from the alleged disability onset date through the date of his death, Mr. Shakeel had the residual functional capacity to perform light work except he was limited to occasional postural maneuvers and had these added limitations:

- He could not climb ladders, ropes, or scaffolds.

- He would have needed to avoid overhead reaching with the bilateral upper extremities.

- He could have engaged in frequent front and lateral reaching with the bilateral upper extremities.

- He would have needed to avoid dangerous moving, unguarded machinery, and unprotected heights.

- He would have needed to avoid potentially violent altercations.

R. 572–75.

At Step 4, the ALJ found that Mr. Shakeel couldn't perform his past relevant work. R. 575. At Step 5, the ALJ determined that Mr. Shakeel could perform jobs, such as small parts assembler, cashier, and packager that exist in significant numbers in the national economy and thus Mr. Shakeel was not disabled under the Social Security Act. R. 576–77.

Ms. Shakeel requested an Appeals Council review of the ALJ's decision. R. 556–62. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155,

1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Ms. Shakeel makes two arguments for why the ALJ erred in finding Mr. Shakeel not disabled. First, Ms. Shakeel argues that the ALJ improperly rejected the opinion of Dr. Foster, Mr. Shakeel's treating physician, when assessing his residual functional capacity. Second, Ms. Shakeel asserts that the ALJ's decision is not supported by substantial evidence. Because the court finds that the ALJ failed to articulate good cause for rejecting Dr. Foster's opinion, the court needn't address the argument that the ALJ's decision isn't supported by substantial evidence.

### A. The ALJ erred in finding that Dr. Foster treated Mr. Shakeel only twice.

Ms. Shakeel asserts that the ALJ erred in giving Dr. Foster's opinion little weight because she was a treating source whose opinions the ALJ had to give substantial or considerable weight absent good cause to discount her opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quotation omitted).

8

On remand, the ALJ considered Dr. Foster's findings and afforded her opinions little weight. R. 574–75. And the ALJ gave four reasons for doing so: (1) Dr. Foster saw Mr. Shakeel on only two occasions; (2) Drs. Rea and Johnson's opinions were entitled to more weight because they had examined Mr. Shakeel many times and were familiar with his limitations; (3) "Dr. Foster's opinion is not supported by or consistent with . . . her own objective examinations or the other objective medical evidence of record"; and (4) Dr. Foster's statements "that something is 'uncontrolled' under 'history of present illness'" isn't a doctor's opinion. R. 575.

In supplemental briefing, the Commissioner essentially concedes that the ALJ erred in finding that Dr. Foster only treated Mr. Shakeel twice.[1] Instead, as the Commissioner notes, "the evidence indicates a long-standing treating relationship" between Dr. Foster and Mr. Shakeel. Doc. 15 at 2. But the Commissioner points out that the ALJ correctly noted that the record includes treatment notes from only two of Dr. Foster's examinations of Mr. Shakeel. And the Commissioner argues that "any error in the ALJ's assessment of the nature of Dr. Foster's treating relationship

---

[1] The Commissioner also concedes that none of this court's statements in Ms. Shakeel's first appeal, such as that "Dr. Foster may not have seen Mr. Shakeel over a long period of time," prevented the ALJ from reassessing the length of Dr. Foster's treating relationship with Mr. Shakeel on remand. Doc. 15 at 3–5.

9

was harmless." *Id.* Before addressing the Commissioner's harmless error argument, the court will explain: (a) Dr. Foster's findings, and (b) how the ALJ erred.

1. <u>Dr. Foster's findings</u>: Dr. Foster's opinion evidence comes from treatment notes following examinations of Mr. Shakeel in April and July 2013. R. 519–29. In the history of present illness section of the April treatment notes, Dr. Foster states that Mr. Shakeel suffers from several chronic conditions, including uncontrolled spinal stenosis, stable coronary artery disease, uncontrolled diabetes mellitus, uncontrolled elevated lipids, and stable hypertension. R. 519. After physically examining Mr. Shakeel, Dr. Foster found that his spinal stenosis caused him to suffer from chronic pain that made him "barely able to function, even with the [L]ortab, [N]eurontin." R. 520.

In July 2013, Dr. Foster stated that Mr. Shakeel suffered from uncontrolled insomnia, uncontrolled depression, uncontrolled alcoholism, uncontrolled elevated lipids, stable hypertension, uncontrolled diabetes mellitus, and uncontrolled spinal stenosis. R. 522. Dr. Foster also noted that though Mr. Shakeel was considering neck surgery, he was unsure if he wanted to go through with the surgery because "they have told him he will still have neck pain." *Id.*

2. <u>The ALJ's error</u>: As discussed above, the ALJ afforded Dr. Foster's findings little weight. And the first reason the ALJ gave for discounting Dr. Foster's

opinions was that Dr. Foster only treated Mr. Shakeel twice. But the record refutes this finding.

Contrary to the ALJ's finding that Dr. Foster only treated Mr. Shakeel in April and July 2013, the record establishes that Dr. Foster was Mr. Shakeel's primary care physician and had been prescribing him medication for several years. For example, October 2010 medical records from Occupational Health Group state that Dr. Foster was prescribing Mr. Shakeel medication for chronic back pain. R. 445, 449, 453. And medical records from November 2012 list Dr. Foster as Mr. Shakeel's primary care physician. R. 506. In addition, a November 2012 letter from Dr. John Johnson to Dr. Joseph Rea states that Dr. Johnson would defer decisions about Mr. Shakeel's ongoing pain management to Dr. Foster. R. 504. Thus, the evidence doesn't support the ALJ's finding that Dr. Foster began treating Mr. Shakeel in April 2013 and only treated him twice. So the ALJ erred.

**B.     The ALJ's error was not harmless.**

But the court's review doesn't end with finding error if that error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("We find that the ALJ made erroneous statements of fact, but we conclude that this was harmless error in the context of this case and that the ALJ applied the proper legal standard."). So the court will address whether the three other reasons the ALJ gave for

discounting Dr. Foster's opinions constituted good cause to afford Dr. Foster's opinions little weight.

1. <u>Opinions of Drs. Johnson and Rea</u>: The second reason the ALJ gave for discounting Dr. Foster's opinions was that "Dr. Foster only saw the claimant on two separate occasions . . . as opposed to Dr. Rea and Dr. Johnson, both who examined the claimant on multiple occasions, were familiar with his limitations and abilities, and reviewed the objective medical [evidence], including claimant's MRI." R. 575.

Earlier in her hearing decision, the ALJ had given great weight to Dr. Rea's opinion that from September 21, 2012 to October 5, 2012 Mr. Shakeel shouldn't work with his left arm above shoulder level and should be restricted to lifting/pushing/pulling 20 pounds. R. 574. She also gave great weight to Dr. Rea's opinion that from September 7, 2012 to September 14, 2012 Mr. Shakeel should have no strenuous gripping/pulling with the left hand and shouldn't work with his left arm above shoulder level. *Id.* Similarly, the ALJ found persuasive Dr. Johnson's findings that Mr. Shakeel "could do light work, with no lifting of more than twenty to twenty-five pounds, and that [he] would not have been able to work in any type of environment where he could be brought into an altercation that would potentially put him at risk with his underlying impairments." *Id.*

An ALJ may have good cause for discounting a treating physician's opinion when the opinion contradicts the opinions of other doctors. *See Fries v. Comm'r of*

*Soc. Sec. Admin.*, 196 F. App'x 827, 833 (11th Cir. 2006). But the problem here is that the ALJ resolved inconsistencies between the opinions of Dr. Foster and Drs. Rea and Johnson based on her determination that Drs. Rea and Johnson were more familiar with Mr. Shakeel's limitations. Thus, the ALJ's error in finding that Dr. Foster only treated Mr. Shakeel twice appears to have affected her decision to give the opinions of Drs. Rea and Johnson greater weight than the opinions of Dr. Foster.

This is all the more apparent because of Dr. Johnson's November 2012 letter to Dr. Rea. In his letter, Dr. Johnson stated, "[i]n terms of ongoing pain management, I would defer that to either Dr. Foster or a physiatrist of choice," R. 504, which suggests that he thought Dr. Foster would be more familiar with Mr. Shakeel's pain management than he was. Because the ALJ's error about Mr. Shakeel's treatment history with Dr. Foster likely affected how she compared the competing medical opinions in the record, the court cannot say that the ALJ articulated good cause for discounting Dr. Foster's opinions by pointing to Drs. Rea and Johnson's opinions.

2. <u>Other objective evidence</u>: The third reason the ALJ gave for discounting Dr. Foster's opinions was that they "were not supported by or consistent with . . . her own objective examinations or the other objective medical evidence of record." R. 575. The ALJ then specifically found that Dr. Foster's opinion that Mr. Shakeel was "barely able to function" contradicted her July 2013 examination of Mr.

Shakeel, which revealed normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. *Id.*

The court cannot accept the ALJ's general statement that Dr. Foster's opinions "were not supported by or consistent with her own objective examinations or the other objective medical evidence of record" as a good reason for discounting Dr. Foster's opinions. Nor does the statement that Dr. Foster's "treatment records do not fully comport with her conclusion" adequately articulate the good cause needed to discount Dr. Foster's opinions. That is because if an ALJ discounts a physician's opinion because it conflicts with other findings, the ALJ must explain how the "findings are genuinely inconsistent" with the medical expert's opinion. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F. 4th 1094, 1107 (11th Cir. 2021). And an ALJ errs when she fails "to clearly articulate" what evidence led her to conclude that the opinion contradicted the other evidence in the record. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019); *see also Winschel*, 631 F.3d at 1179 ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.").

To be sure, the ALJ specifically found that Dr. Foster's opinion that Mr. Shakeel was "barely able to function" contradicted the findings from her July 2013 physical examination of him. But the ALJ did not state that these findings contradicted Dr. Foster's other opinions, such as that Mr. Shakeel's spinal stenosis

"was uncontrolled." And at least some of Dr. Foster's findings supported her opinion that Mr. Shakeel's spinal stenosis was uncontrolled. For example, during the April 2013 examination, Dr. Foster recorded severe pain with motion in Mr. Shakeel's cervical, thoracic, and lumbar spine. R. 520. So even though the ALJ may have adequately explained why the July 2013 findings led her to discount Dr. Foster's opinion that Mr. Shakeel was "barely able to function," she didn't specifically identify evidence that showed that ***all*** of Dr. Foster's opinions conflicted with Mr. Shakeel's medical records. Thus, the ALJ's third reason for assigning Dr. Foster's opinion little weight doesn't render her length of treating relationship finding harmless.

3. <u>'History of present illness' statements</u>: The final reason the ALJ gave for discounting Dr. Foster's opinions was that "the statements by Dr. Foster that something is 'uncontrolled' under 'history of present illness' cannot be a doctor's opinion, as this was the history as stated by the claimant before he was ever examined by Dr. Foster." R. 575.

An ALJ can discount a treating physician's opinion because the opinion stemmed from the claimant's subjective complaints of pain. *See Crawford*, 363 F.3d at 1159. But here, Dr. Foster didn't just note that Mr. Shakeel's impairments were uncontrolled in the "history of present illness" section of her treatment notes. Instead, she also listed Mr. Shakeel's impairments of spinal stenosis, diabetes

mellitus, and elevated lipids as "uncontrolled" under the "assessment/plan" portion of her treatment notes. R. 520, 524. This suggests that Dr. Foster independently assessed these impairments as uncontrolled after physically examining Mr. Shakeel. So that Dr. Foster *also* listed the same conditions as uncontrolled under the history of present illness section of her treatment notes doesn't provide a valid reason to discount this opinion.

\* \* \*

In summary, the ALJ erred when she found that Dr. Foster didn't begin treating Mr. Shakeel until April 2013 and that she only treated him twice. And this error wasn't harmless because the other reasons the ALJ gave for discounting Dr. Foster's opinions do not—on their own—provide good cause for assigning little weight to all the opinions expressed by Dr. Foster. In fact, one or more of the ALJ's other reasons was tainted by the erroneous assumption that Dr. Foster only treated Mr. Shakeel twice.

But the court rejects Ms. Shakeel's argument that it must accept Dr. Foster's opinions as true just because the ALJ failed to adequately articulate valid reasons for discounting her opinions. Instead, the court will remand this case to the Commissioner for the ALJ to reassess Dr. Foster's opinions with the understanding that Dr. Foster was Mr. Shakeel's long-standing primary care physician. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011). In reaching this

decision, the court is not holding that the ALJ must afford Dr. Foster's opinions substantial or considerable weight. The court is instead merely requiring the ALJ to articulate adequate reasons for the weight she assigns the opinions expressed in Dr. Foster's April and July 2013 treatment notes.

## IV. Conclusion

For the reasons stated above, the court will **VACATE** the ALJ's decision and **REMAND** this case to the Commissioner for the ALJ to reassess Dr. Foster's opinion evidence. The court will enter a separate final order that closes this case.

**DONE** on December 8, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE